UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONES & JONES LEASING CO., LLC,

      Plaintiff,

v.

                                     Civil Case No. 19-12746

ZEPSA INDUSTRIES, INC.,               Honorable Linda V. Parker

      Defendant.

_____/

## OPINION & ORDER DENYING MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR STAY UNDER THE COLORADO RIVER ABSTENTION DOCTRINE (ECF NO. 5)

Plaintiff Jones & Jones Leasing Co., LLC filed this suit against Defendant Zepsa Industries, Inc. in Washtenaw County Circuit Court, alleging two counts of breach of contract and one count of unjust enrichment.   (ECF No. 1 at Pg. ID 2.) Zepsa removed the case to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1332.   (*Id.*)

Zepsa now seeks an order dismissing this case under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1404(a), arguing that a forum selection clause was incorporated by reference into the allegedly breached contracts.   (ECF No. 5.) In the alternative, Zepsa seeks an order staying these proceedings under the *Colorado River* abstention doctrine.   (*Id.* at Pg. ID 99.)   For the reasons set forth below, the Court denies Zepsa's motion.

## FACTUAL & PROCEDURAL BACKGROUND

In early 2018, Jones—a company that builds residences—and Zepsa—a company that supplies interior architectural woodwork—entered into two contracts.   (Ex. C, ECF No. 7-4 at Pg. ID 222.)   Under the "Millwork Contract," Zepsa was to design, manufacture and install custom built cabinetry, trim doors, specialty millwork, and paneling for a residence Jones was building in Ann Arbor, Michigan.   (*Id.*; Ex. A, ECF No. 7-2 at Pg. ID 167.)   Under the "Stairs Contract," Zepsa was to design, manufacture, and install one interior stair and one exterior stair in the same residence.   (Ex. B, ECF No. 7-3 at Pg. ID 208.)

Page 1 of the Millwork Contract lists a $1,489,385.00 bid, as well as the following phrase located in the bottom right corner: "The prices, specifications and conditions above and on the back of this proposal are satisfactory and are hereby accepted."   (Ex. A, ECF No. 7-2 at Pg. ID 167.)   Page 2 of the Millwork Contract details services that are "include[d]" and "exclude[d]"; pages 3, 4, and 5 list "qualifications"; page 6 details "pricing breakouts," "labor rates," and "allowances"; pages 7 and 8 list "pricing alternate[s]"; page 9 details "payment terms"; page 10 details a "standard warranty"; and pages 11 and 12 detail the scope of the project based on, among other things, particular architectural drawings and specifications.   (*Id.* at Pg. ID 167-78.)

Page 1 of the Stairs Contract lists a $500,000 budget, terms requiring "20%

2

Contract deposit," "20% Upon approved drawings," and "60% Progress payments against work in progress—in shop or on-site," as well as the same language regarding "prices, specifications and conditions above and on the back of this proposal." (Ex. B, ECF No. 7-3 at Pg. ID 208.) Pages 2 and 3 include "inspiration images for design details," which were to serve as the basis for the "complete shop drawings." (*Id*. at Pg. ID 209-10.) Each page of both contracts is consecutively numbered and, at Zepsa's insistence, Jones' authorized agent—Wayne Jones—dated and signed (or initialed) each page. (Ex. C, ECF No. 7-4 at Pg. ID 222; Ex. A, ECF No. 7-2; Ex. B, ECF No. 7-3.)

At some point during the contractual relationship, Jones concluded that Zepsa breached the two contracts.[1] (*See* Ex. C, ECF No. 7-4 at Pg. ID 222.) As a result, on June 13, 2019, Jones sent Zepsa a letter informing Zepsa that it was terminating the contracts. (Ex. D, ECF No. 7-5 at Pg. ID 224.) On June 25, Zepsa responded indicating that "the improper termination of the [c]ontracts . . . is a clear default of the [c]ontracts." (Ex. E, ECF No. 7-6 at Pg. ID 227.) The response letter also referenced various "terms and conditions of the [c]ontracts." (*Id.*) Two days later, in what appears to be a response to an email from Jones' counsel stating that Jones had never seen, received, or approved any terms and conditions, Zepsa's

---

1 To resolve this motion, the Court need not detail the reasons why Jones believed Zepsa breached the contracts.

3

counsel emailed Jones' counsel, stating:   "Here you go.   These are the terms and conditions on both contracts."   (ECF No. 7 at Pg. ID 143; Ex. F, ECF No. 7-7 at Pg. ID 229.)

Attached to the email was a single-page document captioned "Terms & Conditions" and "Zepsa Stairs."   (Ex. G, ECF No. 7-8.)   The document contains several provisions, including a "Choice of Law and Forum" clause.   (*Id.*)   This clause states:

> All terms and conditions of this agreement shall be governed by the laws of the State of North Carolina.   Any legal proceeding between the buyer and seller arising from or relating to this agreement shall be commenced in a court of competent jurisdiction in the State of North Carolina venued in or nearest to the County of Mecklenburg.

(*Id.*)   Unlike each page of the Millwork and Stairs Contracts, this Terms and Conditions document was not numbered, signed, initialed, or dated by anyone.   (*Id.*)

On July 11, Jones' counsel responded, stating that the "[T]erms and [C]onditions were never provided to Jones [] and there is no mention of them in the [c]ontracts."   (Ex. H, ECF No. 7-9 at Pg. ID 231.)   The letter further stated that Jones never agreed to the Terms and Conditions and they were not part of the contracts.   (*Id.*)   Zepsa's counsel responded via a letter dated July 24, stating in relevant part:

> You are simply incorrect . . . . On page one of each [c]ontract, a mere inch from Wayne Jones'[s] signature, it

4

> states clearly that the "prices, specifications and conditions above and on the back of this proposal are satisfactory and are hereby accepted." . . . . [This] plain language . . . unequivocally references the terms and conditions that normally appear on the back of the front page of the Agreement.   As such, Jones & Jones is bound by the terms and conditions, despite not exercising their obligation to obtain and understand those terms. . . . As such, the terms and conditions are clearly part of the [c]ontracts.

(Ex. I, ECF No. 7-10 at Pg. ID 233-34.)   It appears that the parties thereafter attempted to resolve their dispute.   (Ex. J, Ex. 7-11.)   These attempts were unsuccessful.   (*Id.*)

On the morning of August 22, Jones' counsel called and left a voicemail for Zepsa's counsel.   (*Id.*)   At 10:32 AM on the same day, Jones' counsel followed-up via email, stating: "As a courtesy, I am [] informing you that our client has directed us to file suit against Zepsa for breach of the contracts."   (*Id.*)   Jones filed suit in Washtenaw County Circuit Court ("Michigan Case") that same day, and served the summons and complaint on Zepsa by personal service the next day. (Ex. 1, ECF No. 1-2; Ex. K, ECF No. 7-12.)

Also on August 22, but at 12:21 PM (less than two hours after Jones' counsel forwarded its "courtesy" email), Zepsa filed a single-page "Application and Order Extending Time to File Complaint" ("Application") with the North Carolina State Court for Mecklenburg County ("North Carolina Case").   (Ex. L, ECF No. 7-13 at

Pg. ID 240.)   Zepsa filed the Application pursuant to Rule 3 of North Carolina

General Statute § 1A-1, which allows a party to briefly state the nature and purpose

of the proposed complaint, obtain a summons immediately, and file the actual

complaint within 20 days.   (*Id.*; N.C. Gen. Stat. Ann. § 1A-1, Rule 3.)   Jones

claims that it received Zepsa's summons and Application on August 28.   (*See* ECF

No. 7 at Pg. ID 144.)   Zepsa filed the actual complaint with the Mecklenburg

County Circuit Court on September 4, and the complaint was delivered to Jones on

September 5.   (*See* Ex. M, ECF No. 7-14 at Pg. ID 243, 254; ECF No. 7 at Pg. ID

144.)

On September 20, Zepsa removed the Michigan Case to the United States

District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1332.

(ECF No. 1 at Pg. ID 2.)   Zepsa now seeks an order dismissing the case under

Rule 12(b)(6) and 28 U.S.C. § 1404(a) based on the forum selection clause detailed

in the Terms and Conditions.   (ECF No. 5.)   Alternatively, "Zepsa seeks an order

staying this litigation under the *Colorado River* abstention doctrine because the

same parties and issues in this case are before a North Carolina state court in a case

filed prior to the instant litigation."   (*Id.* at Pg. ID 99.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of

the complaint.   *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125,

1134 (6th Cir. 1996).   Under Federal Rule of Civil Procedure 8(a)(2), a pleading

must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief.'"

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).   In deciding whether the plaintiff has set forth a "plausible" claim, the

court must accept the factual allegations in the complaint as true.   *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007).   This presumption is not applicable to legal

conclusions, however.   *Iqbal*, 556 U.S. at 668.   Therefore, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do

not suffice."   *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when

deciding a Rule 12(b)(6) motion to dismiss.   *Weiner v. Klais & Co., Inc.*, 108

F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th

Cir. 1989)).   A court that considers such matters must first convert the motion to

dismiss to one for summary judgment.   *See* Fed. R. Civ. P 12(d).   However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the

[c]omplaint and any exhibits attached thereto, public records, items appearing in

7

the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein."   *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## APPLICABLE LAW & ANALYSIS

### (I) Were the Terms & Conditions Incorporated into the Contracts?

Zepsa contends that the Terms and Conditions were "referenced" and "explicit[ly] incorporate[ed]" into the Millwork and Stairs Contracts via the language that "the prices, specifications and conditions above and on the back of this proposal are satisfactory and are hereby accepted."   (*See* ECF No. 5 at Pg. ID 100.)   Therefore, Zepsa argues, the forum selection clause in the Terms and Conditions, which requires any suits arising from the contracts be filed in North Carolina, is valid and enforceable and the Court should dismiss Jones' Complaint pursuant to Rule 12(b)(6) and 28 U.S.C. § 1404(a).   (*Id.*)   Jones disagrees, arguing that "[t]he contracts . . . do not specifically identify the document alleged to contain the relevant clause and do not clearly evidence an intention to incorporate the separate document into the [contracts]."   (ECF No. 7 at Pg. ID 138.)

A valid forum selection clause provides sufficient grounds to dismiss a complaint under Rule 12(b)(6) or transfer venue pursuant to 28 U.S.C.

§ 1404(a).  *Langley v. Prudential Mortgage Capital Co.*, 546 F.3d 365, 366 (6th Cir. 2008).  Under Michigan law, a contract can incorporate terms or documents from other writings by reference.  *See Forge v. Smith*, 580 N.W.2d 876, 881-82 (Mich. 1998) ("Where one writing references another instrument for additional contract terms, the two writings should be read together.").  Physical attachment is not necessary to incorporate a document by reference and a party's failure to inquire about terms and conditions referenced in an agreement is no defense "if the contract is clear on its face that such terms were intended to be incorporated." *Robert Bosch Corp. v. ASC, Inc.*, 195 Fed. Appx. 503, 505 (6th Cir. 2006) (unpublished) (citing *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845, 848 (1991)); *see also Forge*, 580 N.W.2d at 881 & n.21 (quoting *United California Bank v. Prudential Ins. Co.*, 681 P.2d 390, 410 (Ariz. 1983)) (noting that physical attachment is not necessary and "[t]he [c]ourt must look for the party's intent within the contract where the words of a written contract are not ambiguous or uncertain").

As the Michigan Supreme Court explained:

> [T]he incorporating instrument must clearly evidence an intent that the writing be made part of the contract.  When the question of whether another paper or term has been incorporated by reference depends on the "exercise of speculation, surmise and conjecture" the court will refuse to rewrite the contract.

*Forge*, 580 N.W.2d at 881 n.21 (quoting *United California Bank*, 681 P.2d at 410).

Indeed, it is "an elementary rule of construction that" when a contract "is

susceptible of two constructions by reason of doubt or uncertainty . . . the

instrument is to be strictly construed against the party [who drafted it]."   *Michigan*

*Chandelier Co. v. Morse*, 297 N.W. 64, 66 (Mich. 1941) (citations omitted); *Klapp*

*v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 457, 459 (Mich. 2003) (same).

Here, the contract language does not clearly and unambiguously evince an

intent to incorporate an unattached Terms and Conditions document.   Even

accepting Zepsa's proposed construction as plausible, the language is susceptible

to a second interpretation:   that all "price, specifications and conditions" *were*

"above and on the back of [the] proposal."   As it concerns the Millwork Contract,

the "price" was listed "above," at the top of page 1.   The contract could be

construed to mean that the "specifications and conditions" included the "pricing

breakouts," "labor rates," "allowances," "price alternate[s]," "payment terms,"

"qualifications," "standard warranty," as well as the services that were

"include[d]" and "exclude[d]," all of which were listed on the "back" beginning on

page 2.   (Ex. A, ECF No. 7-2 at Pg. ID 167-78.)   As it concerns the Stairs

Contract, page 1 not only included the "price" but also terms requiring "20%

Contract deposit," "20% Upon approved drawings," and "60% Progress payments

against work in progress—in shop or on-site."   (Ex. B, ECF No. 7-3 at Pg. ID

10

208.)   These latter terms, along with the images on pages 2 and 3 which were to serve as the basis for the "complete shop drawings," could be construed as constituting the "specifications and conditions" "above and on the back" of the Stairs Contract.

In other words, an indication that "the prices, specifications and conditions above and on the back of [the] proposal" could be construed to mean that the contracting parties need not look beyond pages 1 through 10 of the Millwork Contract and pages 1 through 3 of the Stairs Contract to obtain the "prices, specifications and conditions."   The Court's conclusion would perhaps be different if some pages of the consecutively paginated contracts executed by the parties were missing.   The Court's conclusion may have been different also if the various pages of the contracts did not contain provisions that could be construed as "specifications and conditions."   But neither of these scenarios apply here.   At the very least, the contract language is not sufficiently clear to provide Jones with *notice* that it should seek additional clarification or request a copy of a document that was not on the back of the signed proposal.   *See Robert Bosch*, 95 Fed. App'x at 505 (explaining that "the issue is notice," notice sufficient to incline a party "to pick up the phone to seek clarification").

Notably, Zepsa recently attempted to enforce the same terms and conditions against another party in New York courts:   the attempt was unsuccessful.   *See*

11

*Eshaghpour v. Zepsa Industries, Inc., et. al*, 174 A.D.3d 440 (N.Y.S. 2019).   The

facts of that case as described by the New York Supreme Court are as follows:

> [Zepsa] and plaintiff entered into a contract to install
> architectural woodwork in residential apartments . . . .
> Plaintiff signed the front page of the agreement, indicating
> that the "prices, specifications and conditions above and
> on the back of this proposal [were] satisfactory."   Zepsa
> moved to have the complaint dismissed, relying on the
> "Terms and Conditions" printed on the back of the
> proposal page, which included a forum selection clause
> requiring all disputes to be litigated in North Carolina.
> However, the Terms and Conditions section never
> appeared in the proposed agreement that plaintiff
> ultimately reviewed and signed, and it is undisputed that
> plaintiff never saw the Terms and Conditions page.

*Id.* at 440.   The New York Supreme Court ultimately concluded that:

> Although documents may be incorporated by reference as
> part of an executed agreement, . . . . [t]he referenced
> material must be described in the contract such that it is
> identifiable beyond all reasonable doubt . . . . Here the
> agreement's   oblique   reference   to   an   otherwise
> unidentified Terms and Conditions page, which was never
> provided to plaintiff, is insufficient to meet this exacting
> standard . . . . Indeed, the final 29–page agreement, which
> did not include the "Terms and Conditions," was
> paginated consecutively and signed on each page by both
> parties.   Therefore, contrary to defendants' suggestions,
> plaintiff had no reason to ask for any other documents.

*Id.* at 440-41 (citations omitted).   The trial court subsequently imposed sanctions

on Zepsa for filing a "frivolous" motion that required "an impossible deduction."

(Ex. S, ECF No. 7-20 at Pg. ID 275; ECF No. 7 at Pg. ID 153.)

In sum, this Court will not rely on the "exercise of speculation, surmise and conjecture" in order to rewrite the Millwork and Stairs Contracts as proposed by Zepsa. *Forge*, 580 N.W.2d at 881 n.21 (quoting *United California Bank*, 681 P.2d at 410). The Terms and Conditions—and thus the forum selection clause—were not incorporated by reference and, as a result, relief under Rule 12(b)(6) or 28 U.S.C. § 1404(a) is not appropriate.

### (II) Is Abstention Appropriate Under the *Colorado River* Doctrine?

Zepsa argues that the Court should abstain from hearing this case because it "previously commenced a parallel suit in a North Carolina state court." (ECF No. 5 at Pg. ID 87.)

The Supreme Court has "explained that a district court may sometimes be justified in abstaining from exercising jurisdiction in deference to a parallel state-court proceeding." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976)). Abstention rests on considerations of "wise judicial administration" and the general principle against duplicative litigation. *Colorado River*, 424 U.S. at 817.

Before the *Colorado River* doctrine can be applied, the district court must first determine whether the *concurrent* state and federal actions are parallel. *See Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984) ("The issue

13

is whether [the state court proceedings], as it *currently* exists, is a parallel, state-court proceeding." (emphasis in original)); *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("*Younger v. Harris*[,] 401 U.S. 37 (1971)] [] and its progeny espouse a strong federal policy against federal-court interference with *pending* state judicial proceedings absent extraordinary circumstances." (emphasis added)).

As it relates to this case, there is no concurrent state court proceeding.   In its February 10, 2020 Opinion and Order, the judge presiding over the North Carolina Case—Judge R. Gregory Horne—concluded "that the Michigan federal court is a convenient, reasonable and fair forum for [this] action" and stayed the case "pending the federal court's decision."   (ECF No. 9-1 at Pg. ID 293.) "Consequently, an essential predicate to *Younger* abstention is absent: the presence of an ongoing state prosecution."   *Air Ambulance Inc. v. City of Las Cruces*, 268 F.3d 1162, 1178 (10th Cir. 2001) (citing *Walnut Props. Inc. v. City of Whittier*, 861 F.2d 1102, 1107 (9th Cir. 1988) (holding that the *Younger* doctrine is propelled by concerns of federalism and comity which are not present where a state court has stayed its own proceedings pending resolution of the case in federal court)).

Also, the Court agrees with Judge Horne's finding that "[Zepsa's] North Carolina filing was simply a race to obtain first-filing status."   (ECF No. 9-1 at Pg. ID 294.)   For this reason, even if the Court reached *Colorado River's* eight-factor

14

test, the fourth factor—the order in which jurisdiction was obtained—would not

necessarily favor abstention.   *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206

(6th Cir. 2001) (describing *Colorado River*'s eight-factor test); *Moses H. Cone

Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) ("[P]riority should

not be measured exclusively by which complaint was filed first . . . .").

## CONCLUSION

For the reasons set forth above, the Court finds that the forum selection clause

included in the Terms and Conditions cannot serve as a basis to dismiss or transfer

venue.   In addition, abstention based on the *Colorado River* doctrine is not

appropriate.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss or, in the Alternative,

for Stay Under the Colorado River Abstention Doctrine (ECF No. 5) is **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 28, 2020

15